**PARSONS v. COPLAN PIPE & SUPPLY CO., et al.**

**No. X-157480.**

Industrial Commission.

August 12, 1958.

Lloyd W. Jabara, Miami, for claimant.

Edwin H. Underwood, Jr., Wakefield & Underwood, Miami, for the employer and insurance carrier.

JOHN V. CHRISTIE, Deputy Commissioner.

After due notice to the parties this claim came on to be heard before me on May 12, 1958, June 16, 1958 and July 22, 1958. The undersigned deputy finds that this commission has jurisdiction over the parties hereto and the subject matter of this claim.

Claim was made for the determination of the maximum medical improvement date of the claimant, temporary total disability to the said date, or in the alternative additional temporary total disability, or in the alternative the percentage of permanent partial disability to the claimant's left arm, or in the alternative the percent of permanent partial disability to the claimant's body as a whole, or in the alternative for permanent and total disability. The carrier and employer took the position that the claimant had reached his maximum medical improvement as of February 7, 1958 and suffered a 10% permanent partial disability of the arm as a result of the industrial accident on October 17, 1957, and accordingly the said issues were heard before me.

The evidence reveals that the claimant, a 42-year-old white male, was employed as a shipping clerk or stock man by the employer in its plumbing business at an average weekly wage of $66.07,

when on October 17, 1957 while sitting at a desk a fellow employee threw a fitting which struck his left elbow, thereby causing him to suffer a compensable industrial accident. The carrier and employer accepted the accident as compensable, furnishing medical benefits and temporary total disability up until February 7, 1958, when they commenced to pay him permanent partial disability benefits on the basis of 10% of the arm.

The claimant, as a result of a childhood injury, had a pre-existing disability in the left elbow. He was not and never has been a licensed plumber in the state of Florida, although he had been a plumber in other states for many years. After hours he would do plumbing work for others and did receive some additional income from time to time for said work, however I find that his principal occupation was that of shipping clerk or stock man as above set forth.

He has received no active medical treatment since January of 1958, although he has been examined by several physicians since then. He has not worked since the date of his accident—except for approximately two weeks when he returned to do inventory work for his employer in November or December of 1957.

In addition to the medical reports of the physicians which were received in evidence by me, Dr. B. F. Ponder, a general practitioner, testified that he first examined the claimant on October 17, 1957 and treated him through January 3, 1958. Dr. Ponder was of the opinion that he had a pre-existing disability in the left arm of 10% prior to the accident, and had a 60% disability at present, which included his subjective complaints of pain in the left upper extremity. Dr. Ponder was of the opinion that other than a recommended fusion operation to the elbow he could offer no further medical treatment to him which would be of any benefit and that he has accordingly reached his maximum medical improvement. He likewise was of the opinion that the claimant's body function as a whole was not affected by his arm injury. He referred the man to an orthepedic specialist, Dr. Elwin Neal, for consultation and further stated that he felt the recommended fusion operation was not a serious operation, not a major operation.

Dr. Neal testified—by deposition admitted into evidence—that he had examined the claimant on two occasions and was of the opinion that he had a 10% permanent partial disability to the arm as a result of an aggravation of the pre-existing condition caused by the injury suffered in the industrial accident. He felt that the claimant probably had approximately 50% disability of the left

arm overall and based his ratings to some extent on the American Medical Association Guide set forth in the official publication of that organization dated February 15, 1958. He further testified that he did not feel the claimant had any body function as a whole disability as a result of this accident. He stated that if the claimant has severe pain he would consider a fusion of the elbow which would relieve the pain factor, and he would so recommend that the fusion operation be done, after which his functional disability would be approximately 50%.

Dr. Cabell Young, an orthopedic physician, who had examined the claimant on two occasions, testified that he was of the opinion that the claimant had reached his maximum medical recovery as of February 7, 1958 and suffered a 10% permanent partial disability of the left arm based on aggravation of the pre-existing condition as a result of the injury received in the accident. Based on the aforementioned American Medical Association Guide, the doctor testified the claimant had an overall 23% functional disability of the arm, and he was of the opinion that the claimant suffered essentially the same degree of disability prior to the accident. He testified that his 10% rating attributable to the accident was based principally on the claimant's subjective complaints of pain. The doctor further testified that he felt on the second examination of the claimant that he was not cooperative and to a large extent was exaggerating some of his symptoms during the course of the clinical examination. Dr. Young also testified that he would agree to the recommended fusion operation if the claimant were having enough pain, and while the said operation he considered a major operation, which should be performed in a hospital, he did not consider it a life or death matter.

Two lay witnesses, H. H. Carter and L. H. Cook, testified that they had worked with the claimant prior to the accident although not working with him at the time, and that he did have strength and agility in the arm during their observation of him when he was employed as a stockman for the plumbing company for which both of them were likewise employed as plumbers.

Having considered all of the evidence before me, having noted particularly the candor and demeanor of the various witnesses that came before me, including their interest or lack of interest in the outcome of these proceedings, it appeared to me that the claimant's principal disability in the arm were his complaints of pain. The general consensus of medical opinion was that the recommended fusion operation would eliminate the pain and return him to productive activity if the pain were as great as the evidence

revealed it to be, including the claimant's own testimony. The majority consensus of medical opinion was that the operation was not a serious operation, nor a major operation which would involve the possibility of claimant's life or future well being, but to the contrary was a somewhat ordinary operation. I conclude from the evidence before me that the claimant has no real basis of fear for the operation as his sole contention was that he did not want to have a stiff elbow. Yet for practical purposes at present his elbow is in a sense nearly stiff due to the limitation of motion which he demonstrated to me in the hearing room.

I therefore conclude from my consideration of all the evidence that the claimant suffered a pre-existing disability of the left upper extremity of 30% prior to the aforesaid industrial accident. I further find that claimant presently has disability in excess of 50% of the left upper extremity due solely to the pain factor and that if he underwent the recommended operation his said disability to his upper left extremity would be approximately 50%. I further conclude that the claimant has no reasonable basis for refusing the said operation, yet he has refused same. I likewise find from the evidence that the claimant is not permanently totally disabled, nor do the injuries suffered in the aforesaid industrial accident effect his body as a whole.

Wherefore, it is considered and adjudged that the carrier and employer shall—

1. Pay to the claimant permanent partial disability benefits on the basis of 20% permanent partial disability of the left upper extremity at the compensation rate of $35 per week for a period of 40 weeks commencing with the claimant's date of maximum improvement which I find to be February 7, 1958, taking credit for any permanent partial benefits paid to him since the said date of maximum improvement.

2. Furnish such further medical attention to the claimant as the nature of his injury may require, including the aforementioned fusion operation should he ultimately elect to accept same.

3. Pay to the claimant's attorneys, Wicker & Smith, the sum of $300 as reasonable attorneys fees for services rendered to the claimant.

4. Reimburse the claimant for all medical expenses incurred to date and medical transportation expenses.

5. Pay the costs of this proceeding.